UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **THE O.N. EQUITY SALES COMPANY,** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | **CIVIL ACTION NO. V-07-70** | |
| **v.** § | | |
| § | | |
| **SAMMY B. CATTAN,** § | | |
| § | | |
| **Defendant.** § | | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court are Defendant Sammy Cattan's ("Cattan") Motion to Compel Arbitration (Dkt. No. 10), Cattan's Motion for Protective Order (Dkt. No. 11) and Plaintiff The O.N. Equity Sales Company's ("ONESCO") Motion Under Civil Rule 56(f) for an Order Precluding Summary Disposition of Defendant's Motion to Compel Arbitration Pending Discovery to be Taken on the Issue of Arbitrability (Dkt. No. 17). Having reviewed the motions, the responses thereto, the entire record and the applicable law, the Court is of the opinion that the Motion to Compel Arbitration should be granted and the remaining motions be denied.

**Background**

This action arises out of ONESCO's efforts to enjoin an arbitration filed with the National Association of Securities Dealers ("NASD") relating to Cattan's investment in the Lancorp Financial Fund Business Trust ("Lancorp Fund"). ONESCO has also filed at least 20 nearly-identical federal district court complaints around the country seeking to enjoin other investor's arbitrations related to their respective investments in the Lancorp Fund.

ONESCO is a full service securities broker-dealer registered in all fifty states and a member of the NASD. Through its registered representatives, ONESCO offers a variety of investment

products, including brokerage services, mutual funds and variable insurance products. From March 23, 2004 until January 3, 2005, non-party Gary Lancaster worked as an independent contractor and registered representative of ONESCO. Prior to his employment with ONESCO, Lancaster organized and served as Trustee of the Lancorp Fund.

On March 17, 2003, Lancaster solicited investors for the Lancorp Fund by distributing a private placement memorandum ("Private Placement Memorandum"). In order to purchase shares in the Lancorp Fund, potential investors were required to review the Private Placement Memorandum and execute a subscription agreement ("Subscription Agreement"). On March 3, 2004, Cattan executed the Subscription Agreement. According to the terms of the Private Placement Memorandum and Subscription Agreement, the amount investors paid into the fund was to be initially deposited in an escrow account and held until the closing date. By signing the Subscription Agreement, investors agreed they could "not cancel, terminate or revoke [the Subscription Agreement]." Under the terms of the Private Placement Memorandum, however, the Lancorp Fund offering was subject to "withdrawal, cancellation, or modification" without further notice.

At this time, Cattan had not established any form of contractual or customer relationship with ONESCO. Indeed, it is undisputed that his interactions were exclusively with Lancaster and the Lancorp Fund. However, in April 2004, after Lancaster became a registered representative of ONESCO, he notified Cattan that a material condition of his investment had changed; to wit, that the Lancorp Fund had replaced the insurance component of its proposed investment. Based on the change, Cattan had two choices: he could either (1) confirm his agreement to invest in the Lancorp Fund and acknowledge the change in the insurance component or (2) request withdrawal of his investment.

In an April 2004 reconfirmation letter, Cattan chose not to withdraw his investment, acknowledged the change regarding the insurance component and reconfirmed his desire to purchase shares in the Lancorp Fund. In a letter dated June 14, 2004, Lancaster advised Cattan that the Lancorp Fund "officially became effective as of May 14, 2004." After May 14, 2004, Lancaster invested a significant portion of the Lancorp Fund assets in Megafund, which was later discovered to be a Ponzi-scheme. Consequently, many of the Lancorp Fund's investors, including Cattan, sustained substantial losses.

In March 2007, non-party Allen Samuels initiated an arbitration proceeding before the NASD against ONESCO concerning his investment in the Lancorp Fund. On April 23, 2007, Samuels filed an Amended Statement of Claim, adding additional claimants, including Cattan, to the NASD action. Seeking to hold ONESCO responsible for their losses, the NASD claimants alleged that they invested in the Lancorp Fund based on misrepresentations and omissions Lancaster made while he was a registered representative of ONESCO and that ONESCO negligently failed to supervise Lancaster during this time.

ONESCO then filed its initial complaint in this Court for declaratory and injunctive relief against Cattan. Specifically, ONESCO requests a declaration from the Court that it has no obligation to arbitrate the NASD actions and claims as they relate to the Lancorp Fund and seeks to enjoin Cattan from proceeding with the arbitration before the NASD. ONESCO further wishes to proceed with discovery on the issue of whether arbitration is appropriate and Cattan has moved for a protective order shielding him from such discovery efforts. Cattan has also moved to compel ONESCO's arbitration before the NASD.

**Discussion**

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 634, 648 (1986) (citations omitted). "The question of whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citations omitted). When determining whether the parties entered into a valid arbitration agreement, the court "decides only whether there was an agreement to arbitrate, and if so, whether the agreement is valid." *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1996) (citing 9 U.S.C. § 2). The "court is not to consider the merits of the claims giving rise to the controversy, but is only to determine . . . whether there is a valid agreement to arbitrate." *Id.* If the court finds there is an agreement to arbitrate, the disposition of the merits is left to the arbitrator. *Id.*

The Fifth Circuit has provided a two-step inquiry for courts to employ when determining whether to compel arbitration. Under this framework, the court must determine (1) whether a valid arbitration agreement exists and (2) whether the scope of the parties' dispute falls within that agreement. *JP Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 598 (5th Cir. 2007) (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)); 9 U.S.C. § 4. Upon the determination that the parties entered into an arbitration agreement covering the dispute at issue, the Court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The parties do not dispute the fact that no written contract exists between Cattan and

4

ONESCO.  Thus, the Court cannot identify or analyze a contractual arbitration clause binding ONESCO to arbitrate Cattan's claims.  However, ONESCO's NASD membership binds it to the organization's rules and regulations, including the NASD Code as it relates to arbitration.  *See World Group Secs., Inc. v. Sanders*, 2006 WL 1278738, at *4 (D. Utah. May 8, 2006) (quoting *MONY Secs. Corp. v. Bornstein*, 390 F.3d 1340, 1342 (11th Cir. 2004)) ("even if 'there is no direct written agreement to arbitrate . . ., the [NASD] Code serves as a sufficient agreement to arbitrate, binding its members to arbitrate a variety of claims with third-party claimants'").  The NASD Arbitration Code requires "the arbitration of any dispute, claim, or controversy arising out of or in connection with the business of any member of the Association" that is "between or among members or associated persons and public customers."  NASD Rule 101001.  Furthermore, the NASD Code dictates:

> Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a *customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons* shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.

NASD Rule 10301(a) (emphasis added).

Courts considering this issue have applied a two-part test to determine whether the circumstances underlying the demand for arbitration triggers NASD's Rule 10301 arbitration requirement.  *See The O.N. Equity Sales Co. v. Steinke*, 504 F. Supp. 2d 913, 916 (C.D. Cal. 2007) (citations omitted).  "First, the claim must involve a dispute between either an NASD-member and a customer or an associated person and a customer.  Second, the dispute must arise in connection with the activities of the member or in connection with the business activities of the associated person."  *Id.*; *see also Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993); *Vestax*

*Secs. Corp. v. McWood*, 280 F.3d 1078, 1080 (6th Cir. 2002).

The NASD Code fails to define "customer" or "associated person." *See California Fina Group, Inc. v. Herrin*, 379 F.3d 311, 314 (5th Cir. 2004). However, courts have determined that a customer entitled to demand arbitration under Rule 10301 is anyone who is not a broker or dealer. *See id.* (observing that the term "'customer' as used in Rule 10301(a) is plainly broad enough to include persons who purchased securities from a registered representative of an NASD-member firm, a.k.a. an 'associated person,' and who are not themselves brokers or dealers"); *see also Multi-Financial Sec. Corp. v. King*, 386 F.3d 1364, 1368 (11th Cir. 2004). Under the facts presented here, Cattan was clearly a customer of Lancaster. If Lancaster was an associated person regarding ONESCO at the time Cattan received investment services from Lancaster, NASD Rule 10301 would allow Cattan to compel arbitration against ONESCO. *See Herrin*, 379 F.3d at 318 ("the second requirement of Rule 10301(a) has been fully met [when] there is a connection between the 'customer's' dispute and the 'associated person's' activities"); *King*, 386 F.3d at 1368-70 ("When an investor deals with a member's agent or representative, the investor deals with the member.").

In an attempt to avoid the application of Rule 10301, ONESCO asserts that the Court should narrowly construe Cattan's claims as relating solely to Lancaster's conduct that occurred before Lancaster was associated with ONESCO. Specifically, ONESCO maintains Lancaster was not an associated person with, and that Cattan was thus not a customer of, ONESCO during the relevant time-period comprising the basis for Cattan's claims.[1] However, the Subscription Agreement and

---

[1] ONESCO relies upon *Hornor, Townsend & Kent, Inc. v. Hamilton*, 2004 WL 2284503 (N.D. Ga. Sept.30, 2004), *Gruntal & Co., Inc. v. Steinberg*, 854 F. Supp. 324 (D.N.J. 1994), and *Wheat, First Secs., Inc. v. Green*, 993 F.2d 814 (11th Cir. 1993), for its arguments. However, at least one other court has considered the application of these cases, and with sound reasoning, distinguished them from facts nearly identical to those at hand. *See The O.N. Equity Sales Co. v. Venrick*, 508 F. Supp. 2d 872 (W.D. Wash. 2007). As the *Venrick* court observed: "These cases [] involved allegations of wrongdoing that all arose before a NASD[] member became affiliated with [an] allegedly fraudulent

Private Placement Memorandum merely held Cattan's investment in escrow and Lancaster had complete discretion to modify or terminate the offering at any time before the Lancorp Fund's closing date. Moreover, after Lancaster became associated with ONESCO, the terms of the Lancorp private placement offering were materially altered and Lancaster gave Cattan the opportunity to withdraw or confirm his investment. Thereafter, Cattan confirmed his investment and the sale of the Lancorp Fund offering was finalized. ONESCO's argument clearly misses the mark: at least some, if not all, of the relevant conduct giving rise to Cattan's claims occurred after Lancaster became associated with ONESCO as a registered representative.

ONESCO, furthermore, completely ignores Cattan's claims that ONESCO negligently supervised Lancaster during his tenure as its registered representative. Cattan maintains ONESCO's negligent supervision of Lancaster directly caused Cattan's financial damages. Such allegations alone are sufficient to place Cattan's claims within the purview of Rule 10301. *See King*, 386 F.3d at 1370 (collecting cases). The Court has little trouble concurring with the numerous other courts which, under nearly identical circumstances, have concluded that claimants who had invested in the Lancorp Fund during the same time period as Cattan were "customers" of Lancaster while he was employed as an "associated person" with ONESCO and the ensuing disputes arose "in connection with" its business. *See The O.N. Equity Sales Co. v. Hoegler*, Case No. 07-2703 at 7-8 (D.N.J. Jan. 28, 2008); *The O.N. Equity Sales Co. v. Nemes*, 2008 WL 239258, at *4 (N.D. Cal. Jan. 28, 2008); *The O.N. Equity Sales Co. v. Maria Cui*, 2008 WL 170584, at *3 (N.D. Cal. Jan. 17, 2008); *The*

---

individual or institution. In that context, the quotations from those cases cited by ONESCO carry force . . . [However, t]his is not a case where the activity at issue pre-dated the involvement of the NASD[] member." Like *Venrick*, and for reasons discussed in greater detail above, this Court finds sufficient evidence that Cattan was a customer of, and received investment services from, Lancaster *after* he became associated with ONESCO. Thus, the cases relied upon by ONESCO are not on point and thus fail to persuade this Court in ONESCO's favor.

*O.N. Equity Sales Co. v. Theirs*, 2008 WL 110603, at *4 (D. Ariz. Jan. 10, 2008); *The O.N. Equity Sales Co. v. Emmeretz*, 2007 WL 4462655, at *6-8 (E.D. Pa. Dec. 19, 2007); *The O.N. Equity Sales Co. v. Samuels*, 2007 WL 4237013, at *5-6 (M.D. Fla. Nov. 30, 2007); *The O.N. Equity Sales Co. v. Rahner*, 2007 WL 4258642, at *5-6 (D. Colo. Nov. 30, 2007); *The O.N. Equity Sales Co. v. Wallace*, 2007 WL 4106476, at *4 (S.D. Cal. Nov. 15, 2007); *The O.N. Equity Sales Co. v. Prins*, 519 F. Supp. 2d 1006, 1011-12 (D. Minn. 2007); *The O.N. Equity Sales Co. v. Gibson*, 514 F. Supp. 2d 857, 864-65 (S.D. W. Va. 2007); *The O.N. Equity Sales Co. v. Robinson*, 2007 WL 2840477, at *2 (E.D. Va. Sep. 27, 2007); *The O.N. Equity Sales Co. v. Venrick*, 508 F. Supp. 2d 872, 875-76 (W.D. Wash. 2007); *The O.N. Equity Sales Co. v. Pals*, 509 F. Supp. 2d 761, 769-70 (N.D. Iowa 2007); *The O.N. Equity Sales Co. v. Steinke*, 504 F. Supp. 2d 913, 916 (C.D. Cal. 2007). Therefore, arbitration is appropriate in accordance with Rule 10301.

ONESCO argues that this Court's opinion should differ from others courts' concerning this matter because it should not employ a presumption that Cattan was a customer of ONESCO or of Lancaster while Lancaster was associated with ONESCO. ONESCO bases its argument on the Fifth Circuit's statement that "the federal policy favoring arbitration does not apply . . . when a court is determining whether an agreement to arbitrate exists." *California Fina Group, Inc. v. Herrin*, 379 F.3d 311, 316 n.6 (5th Cir. 2004). However, this Court need not employ any such presumption or policy in this case because, as discussed above, it is clear that Cattan was a customer of, and received investment services from, Lancaster at the time he was associated with ONESCO. Therefore, because the Court has no doubts Cattan is entitled to arbitrate his claims pursuant to NASD Rule 10301, ONESCO's argument is unavailing. Morever, like the courts who have already dealt with issues mirroring those presented here, this Court concludes that further discovery in not

needed to determine this controversy.  *See, e.g.*, *Rahner*, 2007 WL 4258642, at *5-6 (the discovery ONESCO desires would not have any impact on the relevant legal determination); *Emmeretz*, 2007 WL 4462655, at *4 (further discovery is not necessary to decide the issue of arbitrability and would only encourage expense and delay).

Based on the Court's determination that Cattan's NASD claims are arbitrable, ONESCO cannot establish a substantial likelihood of success on the merits regarding the issue of arbitration, and the Court accordingly denies ONESCO's request for a preliminary injunction against arbitrating the parties' dispute  *See Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 195-96 (5th Cir. 2003) (a court's granting of a preliminary injunction requires that "the applicant . . . show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest").

Finally, the Court notes that it will not sever Cattan's claims based on activities that took place during Lancaster's association with ONESCO from those that occurred before their business together or after their separation.  As one court has observed, "Defendants' claims stem from a series of transactions with [] Lancaster involving a single investment opportunity.  It is up to the arbitrator to decide the case on its merits and to determine which, if any, of the events give rise to liability on the part of ONESCO." *The O.N. Equity Sales Co. v. Prins*, 519 F. Supp. 2d 1006, 1012 (D. Minn. 2007) (citing *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 634, 649-50 (1986)).  Like the *Prins* Court, this Court finds that the issues raised by ONESCO's request for severance implicate questions of liability, not arbitrability, and thus, severance is not justified.

**Conclusion**

Based on the foregoing, the Court hereby rules as follows:

1. Defendant's Motion to Compel Arbitration (Dkt. No. 10) is **GRANTED**;

2. Plaintiff's Motion Under Civil Rule 56(f) for an Order Precluding Summary Disposition of Defendant's Motion to Compel Arbitration Pending Discovery to be Taken on the Issue of Arbitrability (Dkt. No. 17), including any requests for further discovery or severance, is **DENIED**; and

3. Defendants' Motion for Protective Order (Dkt. No. 11) is **DENIED** as moot.

4. Because the Court has addressed all of the parties' motions and ordered the parties to arbitration, this case shall be **DISMISSED**.

It is so ORDERED

Signed this 8th day of February, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE